**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| Narlin Shadd, | ) | CASE NO.  1:06 CV 2478 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Alvin L. White, et al., | ) | <u>Memorandum of Opinion and Order</u> |
| | ) | |
| Defendant. | ) | |

## <u>Introduction</u>

This matter is before the Court upon defendant Alvin L. White's Motion for Summary Judgment (Doc. 42) and Motion for Summary Judgment of defendants City of Cleveland, Rocco M. Pollutro, Martin L. Flask, Mary G. Bounds, Edward F. Lohn and Michael McGrath (Doc. 43). This case arises under 42 U.S.C. § 1983 and alleges police misconduct.  For the following reasons, defendant Alvin L. White's Motion for Summary Judgment is DENIED and the Motion for Summary Judgment of defendants City of Cleveland, Rocco M. Pollutro, Martin L. Flask, Mary G. Bounds, Edward F. Lohn and Michael McGrath is GRANTED.


## <u>Facts</u>

1

Plaintiff, Narlin R. Shadd, filed this lawsuit in the Cuyahoga County Common Pleas Court.  The case was thereafter removed to this Court on the basis of federal question jurisdiction.  An Amended Complaint was thereafter filed naming as defendants, Alvin L. White, Joseph C. O'Neill, Rocco M. Pollutro, Martin L. Flask, Mary G. Bounds, Edward F. Lohn, Michael McGrath and City of Cleveland.  Subsequently, defendants Joseph C. O'Neill, Rocco M. Pollutro and Mary G. Bounds have been dismissed from the case.

On the evening of September 9, 2005, defendant White, a Cleveland Police Officer, was directing traffic in the course of his employment at the intersection of Ontario and Carnegie in Cleveland.  (White depo.)  According to plaintiff, the following encounter occurred with White.  Plaintiff had attended a Cleveland Indians baseball evening game at Jacobs Field with several relatives, including his wife, sister, brother, daughter and two sons. Early in the game, plaintiff, who drinks infrequently, had one average-sized cup of beer.  He also had ice cream, popcorn and a hot dog.   Plaintiff left the game during the ninth inning to retrieve his Ford Escape sport utility vehicle and pick up the other members of his family, except his sons who drove home separately. After getting his vehicle, plaintiff approached Jacobs Field driving westbound on Carnegie Ave.  In order to coordinate a pick-up spot, plaintiff was talking to his daughter on the cell phone, which was either to his ear or in his lap and set on speaker phone.   When he reached the intersection of Ontario St., he was in the far right of the three westbound lanes. White was in the intersection directing traffic. Ahead of plaintiff in his lane was a luxury bus and a small car behind it.  White motioned the bus and car in front of plaintiff to proceed right onto Ontario.  Plaintiff also proceeded.  White then gestured for plaintiff to stop.  Plaintiff stopped.  Plaintiff's car was positioned about 20 feet

2

from White, and the front of his car was positioned just over the crosswalk.  White then walked over to plaintiff's open window (plaintiff still had his vehicle in drive with his foot on the brake) and said to plaintiff, "If I wanted you to stop there, I would have told you." Plaintiff responded, "I did stop whenever I saw you signal."  White then said, "Don't tell me what you saw."  White took a flashlight or similar object and shoved it onto plaintiff's nose and mouth.  Plaintiff, who was shocked, reflexively took his right hand and brushed the object away off his face and said, "What are you doing, you jerk?" White immediately punched plaintiff in the face with his fist while saying, in a threatening tone, "Say it again." Then White immediately punched plaintiff again in the same area.  The punches caused blood to spray from plaintiff's face, and were hard enough to break off bits of plaintiff's top front teeth. White then told plaintiff to get out of his car and White immediately opened plaintiff's door and started yanking plaintiff out of his vehicle, although plaintiff was still wearing his seat belt and the car was still in "drive."  White pulled plaintiff by his left arm, which had been paralyzed in an earlier accident and remained severely atrophied.  At that time, police officer Joseph O'Neill came over to plaintiff's car and attempted to grab plaintiff's keys. Plaintiff then turned off his engine and O'Neill took the keys.  Plaintiff unfastened his seat belt and the two police officers pulled him out of the vehicle and quickly walked him to the median strip in Ontario Street.  Plaintiff had a hard time keeping up with the officers. Plaintiff was bleeding from his nose and mouth, very distressed, and repeatedly asking, "What did I do?" At the median, the officers pushed plaintiff's upper body and head forcefully down onto the back of a police car.  The officers attempted to put plaintiff's arms behind his back and plaintiff informed them that his left arm was paralyzed.   White then kicked plaintiff very

3

hard on the back of his right calf. About this time, plaintiff's daughter and wife arrived. Plaintiff's daughter attempted to protect plaintiff's right arm, which had also been previously injured and could be moved to behind plaintiff's back only to a limited extent.  Plaintiff's daughter informed the police officers of this and they ignored her.  Plaintiff's daughter and wife were very upset. At one point, plaintiff raised his head or upper body slightly to look at his daughter and the officers slammed his head down on the police car. At about this time, plaintiff's brother and sister arrived at the median strip, and the officers put plaintiff in the back seat of the police car, without resistance.   The officers had been unable to handcuff plaintiff and, as a result, cuffed plaintiff's right wrist to a bar along the left window on the driver's side of the police car.  The officers left plaintiff in this position, which was painful, for about thirty minutes.  White then drove plaintiff to the City jail in the Justice Center where he was held until the afternoon of Monday, Sept. 12, 2005. (pltf. aff.; pltf. depo.)

White testified that while directing traffic, he signaled for plaintiff to stop his vehicle. While White had his back to plaintiff and was crossing pedestrians in the crosswalk, plaintiff bumped him from behind with his car.  White was not injured. White then approached plaintiff's vehicle.  Plaintiff said some words to White, who then reached into plaintiff's car to attempt to turn off the ignition.  Plaintiff impeded White from doing so.  White then assisted plaintiff out of the vehicle, with the help of O'Neill, as plaintiff resisted.  White never struck plaintiff and eventually put him into the police car and handcuffed plaintiff to the bar of the back window of the car.   (White depo.)

White prepared an Offense/Incident Report wherein he noted that after bumping White with his car, White approached plaintiff's vehicle and asked plaintiff "why he didn't

4

stop behind the white line before the crosswalk and why did he bump me!!"  Plaintiff yelled

expletives at White and White smelled a strong odor of alcohol coming from plaintiff's

breath.  Plaintiff refused orders to exit the vehicle.  O'Neill assisted White in getting plaintiff

out of his vehicle.  During the tussling which ensued, plaintiff "was struck in the head by a

result of his actions."  (White depo. Ex. 8)

Sgt. Joseph O'Neill testified that while he was directing traffic at the opposite end of

the same intersection he glanced over and saw Officer White jumping away from Shadd's

window.  He went over to see what was going on. Upon arriving, O'Neill was informed by

White that he wanted plaintiff to step out of his vehicle.  O'Neill assisted White in removing

plaintiff from his vehicle and escorting him over to the police car while plaintiff staggered or

refused to walk properly.   O'Neill noticed that plaintiff was intoxicated as evidenced by his

bloodshot eyes, an odor of alcohol on his breath and his inability to stand properly.  (Joseph

O'Neill depo.)

Sgt. Walter Batie, the supervising officer, was then called to the scene.  Batie testified

that when he entered the police car to talk with plaintiff he smelled a strong odor of alcohol

coming from plaintiff. (Batie depo.)

Plaintiff was charged with assault on a police officer, failure to comply and resisting

arrest.  (Doc. 51 Ex. 6) Plaintiff was not given any field sobriety tests or a breathalyzer test at

the Justice Center, and was not charged with DUI.  (White depo., O'Neill depo.)  The

Cuyahoga County prosecutor referred the charges to the grand jury which returned a no-bill

on November 23, 2005. (Doc. 42 Ex. I)[1]

Plaintiff's Amended Complaint sets forth seven claims.  Counts Two and Four assert claims against O'Neill who has been dismissed.  Count One alleges assault and battery against White as well as excessive force under § 1983.  Count Three alleges false imprisonment against White as well as unreasonable seizure under § 1983.  Count Five alleges malicious prosecution against White.  Count Six alleges that defendants Flask, Lohn and McGrath negligently retained White as an employee.[2]  Count Seven alleges that defendants City of Cleveland, Flask, Lohn and Mcgrath were deliberately indifferent to plaintiff's constitutional rights.[3]

This matter is now before the Court upon defendant Alvin L. White's Motion for Summary Judgment and Motion for Summary Judgment of defendants City of Cleveland, Rocco M. Pollutro, Martin L. Flask, Mary G. Bounds, Edward F. Lohn and Michael McGrath.

**Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine

---

[1]     White filed a misdemeanor complaint on September 13, 2005 alleging failure to comply with a lawful order which was dismissed for want of prosecution on November 22, 2005, obviously in light of the grand jury presentment which included failure to comply.  (Doc. 42 Ex. H)

[2]     This claim was also asserted against defendants Pollutro and Bounds who have been dismissed.

[3]     This claim was also asserted against defendants Pollutro and Bounds who have been dismissed.

issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial
> responsibility of informing the district court of the basis for its
> motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with affidavits," if any, which it believes demonstrates
> the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  A fact is "material only if its

resolution will affect the outcome of the lawsuit."  *Anderson v. Liberty Lobby*, 477 U.S. 242,

248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the

nonmoving party.  Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported
> as provided in this rule, an adverse party may not rest upon the
> mere allegations or denials of [his] pleadings, but [his
> response], by affidavits or as otherwise provided in this rule,
> must set forth specific facts showing that there is genuine issue
> for trial.  If he does not respond, summary judgment, if
> appropriate, shall be entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most

favorable to the nonmoving party.  *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th

Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562

(6th Cir. 1985).  However, the nonmoving party may not simply rely on its pleading, but must

"produce evidence that results in a conflict of material fact to be solved by a jury."  *Cox*, 53

F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial

does not establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d

937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "the mere existence

7

of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)).  Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citation omitted).

**Discussion**

**(1) Defendant Alvin L. White's Motion for Summary Judgment**

The Amended Complaint asserts claims for assault and battery and § 1983 excessive force (Count One), false imprisonment and § 1983 unreasonable seizure (Count Three) and malicious prosecution (Count Five) against White.

**(a) § 1983 claims- Qualified Immunity**

White argues that he is entitled to qualified immunity on the § 1983 claims because his actions were objectively reasonable in light of the totality of the circumstances.

"The doctrine of qualified immunity shields government officials from liability, as well as from suit, so long as their official conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hardy v. Jefferson Community College*, 260 F.3d 671 (6th Cir. 2001) citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   The Sixth Circuit has explained:

> The Supreme Court has instructed that a qualified immunity inquiry generally entails two discrete analytical steps.  As a threshold matter, we must ask whether the record, viewed most favorably to the plaintiff, establishes that 'the officer's conduct violated a constitutional right.' *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001); *see also Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). 'If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.' *Saucier*, 533 U.S. at 201, 121 S.Ct. at 2156.  'On the other hand, if a violation could be made out on

8

a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.' 533 U.S. at 201, 121 S.Ct. at 2156; *see also Burchett*, 310 F.3d at 942.

*Cherrington v. Skeeter*, 344 F.3d 631, 636 (6th Cir. 2003).

With regard to the question whether the right was clearly established, this inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201.  Further, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id*. at 202.

Therefore, this Court must first determine whether plaintiff has demonstrated the violation of a constitutionally protected right.  Plaintiff herein alleges that his Fourth and Fourteenth Amendment federal constitutional rights were violated by defendants' use of excessive force during the incident on September 9, 2005, and that he was unreasonably seized on that night in violation of the Fourth and Fourteenth Amendments.

**(i) excessive force**

Although plaintiff alleges that White violated both his Fourth and Fourteenth Amendment rights to be free from excessive force, the legal status of the plaintiff asserting excessive force determines whether the Fourth or Fourteenth Amendment governs his claim. *See U.S. v. Budd*, - F.3d.- (6th Cir. August 13, 2007).  Here, the Court applies a Fourth Amendment analysis as the allegations stem from force used during the course of an arrest. *See Baker v. City of Hamilton,* 471 F.3d 601 (6th Cir. 2006).

In order to make a showing of excessive force under the Fourth Amendment's "objective reasonableness" test, courts must view the reasonableness of any seizure in light of

the totality of the circumstances and analyze the facts "'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Id*. at 307 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  When conducting a reasonableness analysis, courts should pay particular attention to "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. *See also Darrah v. City of Oak Park*, 255 F.3d 301, 307 (6th Cir. 2001); *Ewolski v. City of Brunswick*, 287 F.3d 492, 507 (6th Cir. 2002).  A determination of reasonableness must also consider the fact that "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving– about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.  An officer's underlying intent is not relevant in evaluating "objective reasonableness:" "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id.* at 397.

White asserts that accepting plaintiff's version of the facts as true, his use of force was reasonable under the circumstances known to him.[4]  In particular, White asserts the following.

---

[4]     Clearly, without accepting plaintiff's version of the facts, the material facts are in dispute and summary judgment is not appropriate.  *DeMerrell v. City of Cheboygan,* 206 Fed.Appx. 418 (6th Cir. 2006) ("Although the Fourth Amendment 'reasonableness' inquiry is largely fact-driven, summary judgment for defendant public servants founded in qualified immunity is nonetheless appropriate when the undisputed material facts, or the plaintiff's version of disputed material facts, demonstrate that a hypothetical reasonable officer would not have known that his actions, under the circumstances, were objectively unreasonable.")

10

He was directing traffic at a busy intersection at a time when it was dark out and there was a mass of pedestrians leaving the Indians game.  Plaintiff was driving his Ford Escape that night and had arrived at the intersection of Carnegie and Ontario as the crowd was leaving the Indians game. Plaintiff stopped his vehicle in the pedestrian crosswalk, a minor-misdemeanor offense as stated in Cleveland Codified Ord. §431.33 which provides:

**Obstructing Intersection, Crosswalk or Grade Crossing**

No driver shall enter an intersection or marked crosswalk or drive onto any railroad crossing unless there is sufficient space on the other side of the intersection, crosswalk or grade crossing to accommodate the vehicle he is operating without obstructing the passage of other vehicles, pedestrians or railroad trains, notwithstanding any traffic control signal indication to proceed.

This prompted White to come over to plaintiff's window.  White then smelled a strong odor of alcohol coming from plaintiff and shone his flashlight in plaintiff's face.  Plaintiff swiped at White's hand, thus assaulting a peace officer. White responded by punching plaintiff through the open car window. With Sgt. O'Neill's assistance, White removed plaintiff from the vehicle  and took plaintiff through the mass of pedestrians over to the police car on the median, dragging plaintiff because he was not walking properly. The officers bent plaintiff over the back of the police car, while plaintiff  resisted by trying to push back upward so that he could speak with his daughter, who had just arrived at the police car. Additionally, plaintiff could not move his arm to allow the officers to handcuff him, which even plaintiff recognized could be interpreted as resisting arrest.  White then kicked plaintiff's calf to spread his legs apart, handcuffed plaintiff  and forced plaintiff into the police car.

11

White likens his case to that of *Goodrich v. Everett,* 193 Fed. Appx. 551 (6th Cir. 2006).  The facts there, however, were quite different.  In *Goodrich,* police officers had obtained information that led them to reasonably believe that plaintiff was a suspect for the crime of aggravated domestic assault, a violent offense.  Outside his house, plaintiff refused police orders to step out of his van.  One police officer yelled in a loud and threatening tone that if he did not get out of his vehicle, he was going to be sorry.  Plaintiff perceived this as a threat of physical harm and decided to drive to a nearby police station in another city.  He drove two miles, refusing to pull over in response to the flashing lights of five different law enforcement vehicles. Plaintiff did abide by other traffic rules, such as driving within the speed limit and stopping at stop signs.  Plaintiff evaded two police roadblocks, one by driving over the front yard of a home.  Once at the neighboring police station, plaintiff exited his vehicle and began walking toward the police station.  Plaintiff states that his intention was to surrender.  The pursuing police officers took plaintiff to the ground.  In the resulting encounter, plaintiff fractured and dislocated his hip, injured his chest wall and injured his right leg.  The court disagreed that the officers used excessive force because a reasonable police officer would have suspected plaintiff of a violent crime and would have interpreted his actions as an attempt to evade the police.

For the following reasons, this Court does not find that White's actions were objectively reasonable.

White asserts that he used reasonable force after being assaulted by plaintiff who had stopped his car in a pedestrian crosswalk during a time when many people were in the area. White contends that a reasonable officer could determine that plaintiff's striking at the

12

officer's hand could require a forceful response. White, however, states that he is accepting

(as he must do so) plaintiff's version of the facts for purposes of deciding the motion.

Accepting that version, the Court cannot conclude, as a matter of law, that a reasonable

officer would not have known that his actions, under the circumstances, were objectively

unreasonable.  Specifically, according to plaintiff, plaintiff stopped his vehicle just over the

crosswalk when he saw White's signal to stop.  White put his flashlight into the window and

shoved it onto plaintiff's nose and mouth after plaintiff told White that he stopped when he

saw White signal.  Although White asserts that he, O'Neill and Batie all smelled alcohol on

plaintiff's breath, plaintiff testified that he had only one average-sized beer early in the game

followed by food.  Thus, although White's attorney infers in his brief that White shone the

flashlight into the car in response to smelling alcohol, the Court must accept plaintiff's

version of the facts and conclude that White put the flashlight into plaintiff's nose and mouth

in response to plaintiff's exchange of words with White.  Plaintiff brushed the flashlight or

object away from his face and said, "What are you doing, you jerk?" White responded by

twice punching plaintiff in the face with his fist, causing blood to spray from plaintiff's face

and bits of plaintiff's top front teeth to break off.  Plaintiff still had his seatbelt on and his car

in drive.  No reasonable police officer could consider this an appropriate response to

plaintiff's action in brushing away the object and calling White a jerk.

Moreover, up to that point, plaintiff had not committed any crime.   As discussed

above, plaintiff's version of the facts does not support White's assertion that he was assaulted

by plaintiff. White now asserts that plaintiff had committed a minor misdemeanor offense by

stopping his vehicle in a pedestrian crosswalk, although plaintiff was not charged with this

13

offense.  Plaintiff admits that his vehicle was "just over the crosswalk" but that he stopped there in response to White's signal.  White asserts in his reply brief that plaintiff was distracted because he was talking on the cell phone and, therefore, apparently did not stop immediately when White signaled for him to stop.  Again, the Court must accept plaintiff's version of the facts and assume that plaintiff stopped when he saw White signal.  Plaintiff's version of the facts does not show that he had entered a marked crosswalk without sufficient space on the other side of the crosswalk to accommodate plaintiff's vehicle without obstructing the passage of other vehicles or pedestrians.  Accordingly, "the severity of the crime at issue" weighs in plaintiff's favor.

Nor is there evidence that plaintiff posed "an immediate threat to the safety of the officers or others."  Plaintiff's testimony is that White opened his car door and tried to pull him out by his atrophied arm while he was still in his seatbelt and the car in drive.  No reasonable fact finder could conclude that plaintiff's inability to immediately exit the car at that point meant that plaintiff was  "actively resisting arrest."  Nor is there any evidence that plaintiff was "attempting to evade arrest by flight."

For these reasons, accepting plaintiff's version of the facts, plaintiff has established that a Fourth Amendment violation occurred.  Furthermore, it would be clear to a reasonable police officer that his conduct in twice punching the driver was unlawful in this situation.  Thus, the constitutional right was clearly established.

### (ii) unreasonable seizure

White asserts that plaintiff's unreasonable seizure claim fails because a reasonable officer in White's position would believe he had probable cause to arrest plaintiff.  For the

14

following reasons, this Court disagrees.

The Fourth Amendment protects the right of individuals to be free from improper arrest and detention. A warrantless arrest by a police officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed, *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004), and the "validity of the arrest does not depend on whether the suspect actually committed a crime." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979). As such, "[i]n order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause." *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir.2002).  "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Logsdon v. Hains*, 492 F.3d 334 (6th Cir. 2007) (quoting *Henry v. United States*, 361 U.S. 98, 102 (1959) ).

White contends that based on the facts known to him at the time of plaintiff's arrest, a reasonable officer would have believed he had probable cause to arrest plaintiff.  Specifically, White asserts that plaintiff stopped his vehicle in a crosswalk (a minor misdemeanor offense) at a time of heavy pedestrian traffic.  Upon reaching plaintiff's car, White smelled alcohol and shone his flashlight in plaintiff's face.  Plaintiff swiped at White's hand, thus causing a reasonable officer in White's position to believe that plaintiff was trying to harm him.  This gave White probable cause to arrest plaintiff for the fourth degree felony, assault on a peace officer.  When White and O'Neill attempted to handcuff plaintiff at the police car, plaintiff kept resisting by raising his head from the trunk of the car, thus using force to interfere with his lawful arrest in violation of state law.

15

As discussed above, plaintiff testified that he stopped his vehicle at White's signal to stop and his car rested just over the crosswalk.  Plaintiff also testified that he had only one average-sized cup of beer early on at the game, followed by food.   White's assertion that he smelled a strong odor of alcohol (and O'Neill's and Batie's assertion as well) is clearly a disputed issue of fact.  White states that he shone his flashlight into plaintiff's car in response to smelling alcohol.  In support of this statement, however, White points to plaintiff's testimony that White shoved the flashlight into his face.  White does not point to his own testimony that he was shining the light to investigate the smell of alcohol.  This seems to be merely a surmise by White's attorney in his brief. Plaintiff's testimony is that he brushed the flashlight (or similar object) away from his face.  A reasonable officer would not consider this as an assault on a peace officer.  Finally, plaintiff testified that he raised his head in an effort to comfort his daughter, not that he was resisting arrest.

For these reasons, White is not entitled to qualified immunity because plaintiff has demonstrated that White lacked probable cause to arrest him and, thus, a constitutional violation occurred.  Moreover, the law was clearly established that, absent probable cause to believe that an offense had been committed, was being committed, or was about to be committed, officers may not arrest an individual.

**(b) state law claims**

**(i) assault and battery; false imprisonment**

White argues that these claims are barred by Ohio Revised  Code § 2744.03((A)(6) which states that municipal employees are immune from liability for "injury, death, or loss to a person or property" allegedly caused by any act or omission in connection with a

16

governmental or proprietary function which includes the provision of police services.   White

contends that the exceptions do not apply because White did not act "manifestly outside the

scope" of his employment or official responsibilities, nor were White's acts or omissions with

malicious purpose, in bad faith, or in a wanton or reckless manner.  White bases this assertion

on his argument that he acted reasonably in his use of force and his arrest of plaintiff. As

discussed above, however, White did not act reasonably.  White further contends that he did

not act in bad faith or in a reckless manner by charging plaintiff with failure to comply with a

lawful order because plaintiff admits that he stopped in the crosswalk and there is no evidence

that he stopped immediately when White signaled.  Plaintiff, however, testified that he

stopped immediately when White signaled.  White further asserts that plaintiff admits that he

did not immediately get out of his car when instructed to do so by White.  White cites to

portions of plaintiff's deposition testimony which do not support this assertion.  Rather,

plaintiff testified that immediately after White punched him in the face twice,

> Then [White] said get out of the car, and he immediately opened my door and was
> pulling at my left arm, which, of course, was closest to him while I had my seat belt
> on, while my car was in drive and while I had my foot on the brake because I had just
> stopped.

(pltf. depo. 28)  Finally, White asserts that plaintiff would not walk properly as the officers

tried to escort him through the crowd, forcing them to drag plaintiff to the police car.

Plaintiff, however, testified that the officers rushed him over to the median strip so that he

could barely keep up.

For these reasons, White is not entitled to immunity on the state law claims of assault

and battery and false imprisonment.

**(ii) malicious prosecution**

17

To succeed on a claim of malicious criminal prosecution, under Ohio law, a plaintiff must show three elements: (1) malice in instituting or continuing the prosecution, (2) lack of probable cause and (3) termination of the prosecution in favor of the accused.  *Logsdon v. Hains,* 492 F.3d 334 (6th Cir. 2007).

While White contends that he did not participate in the prosecutor's decision to present the charges to the grand jury, plaintiff asserts that White completed the Incident Report which lead to the charges.  A private individual may be liable for malicious criminal prosecution for filing a criminal complaint upon which the county prosecutor pursues a criminal action.  *See Eberhart v. Paintiff,* 2005 WL 1962993 (Ohio App. 9th Dist. Aug. 17, 2005).  So too, White instituted the charges which the prosecutor referred to the grand jury. On this basis, summary judgment is not appropriate.

For the foregoing reasons, defendant Alvin L. White's Motion for Summary Judgment is denied.

### (2) Motion for Summary Judgment of defendants City of Cleveland, Rocco M. Pollutro, Martin L. Flask, Mary G. Bounds, Edward F. Lohn and Michael McGrath

Defendants Rocco M. Pollutro and Mary G. Bounds have been dismissed from the case and the motion is moot as to them. Count Six alleges, under state law, that defendants Flask, Lohn and McGrath negligently retained White as an employee.  Count Seven alleges, under federal law, that defendants City of Cleveland, Flask, Lohn and Mcgrath were deliberately indifferent to plaintiff's constitutional rights.  Plaintiff states in his brief that he is dismissing his claims against Flask, Lohn and McGrath in their personal capacities, but not in their official capacities.  Plaintiff's brief makes clear that he has abandoned Count Six and is

18

proceeding only upon Count Seven.

Plaintiff's claims against defendants in their official capacity are, in effect, claims against the City. *Pusey v. City of Youngstown*, 11 F.3d 652, 658 (6th Cir.1993) ("An official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.")  Thus, plaintiff's remaining claim is the deliberate indifference claim against the City.

Defendants argue that the City is entitled to summary judgment because there was no underlying constitutional violation.  For the reasons, discussed above, summary judgment is not warranted on this basis.  Defendants further assert that the City does not have a custom, policy, or practice that violated plaintiff's constitutional rights.  For the following reasons, this Court agrees.

A plaintiff who sues a municipality for a constitutional violation under § 1983 must prove that the municipality's policy or custom caused the alleged injury. *Monell v. Dept. of Soc. Servs*., 436 U.S. 658, 690-91 (1978). In *City of Canton* 489 U.S. 378, 388 (1989), the United States Supreme Court stated:

> The inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.... Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983.

Plaintiff asserts that the City acted with deliberate indifference to the rights of the public by adopting a policy of failure to adequately supervise its police officers by not removing problem officers from contact with the public.

Where inadequacies in the training and supervising of employees result in a

19

constitutional deprivation, municipal liability arises. *Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907 (6th Cir.1995). A municipality can be liable under § 1983 only where its policies are the "moving force [behind] the constitutional violation." *City of Canton*, 489 U.S. at 389.  Where a city does create reasonable policies, but negligently administers them, there is no deliberate indifference and, therefore, no § 1983 liability.  *Perez v. Oakland County*, 466 F.3d 416 (6th Cir. 2006).

Plaintiff asserts that White's career as a Cleveland Police Officer since 1991 shows the City's deliberate indifference to protecting the public from its problem officers as evidenced by the following instances of White's misconduct since becoming a police officer. The Court disagrees that the evidence supports the City's liability under § 1983.

White was charged with misdemeanor disorderly conduct in connection with hitting his girlfriend.  The charge, however, was dismissed with the consent of the victim. White was investigated for criminal misconduct on four other non-police related occasions.  Nonetheless, White was not charged.

Plaintiff's attorney herein previously sued White alleging excessive force. Plaintiff acknowledges, however, that the lawsuit was "unsuccessful."  Moreover, the fact that an officer has been sued, standing alone, does not establish liability on the part of a city.  *Marvin v. Taylor,* 2006 WL 1779394 (6th Cir. June 26, 2006).

Additionally, White has had approximately 22 internal complaints filed against him in his capacity as police officer by members of the public. Despite the number of complaints, plaintiff points out that White testified that he has never been disciplined except for receiving two letters of reprimand- one for unauthorized off-duty work and one in connection with an

arrest of a citizen.  Plaintiff, however, acknowledges that not all of the complaints involve alleged physical abuse, but many involve alleged "verbal abuse or rudeness."  Only complaints of excessive use of force similar to that involved in plaintiff's case are relevant herein.  *Lucijanic v. City of Columbus,* 2006 WL 1000225 (6th Cir. April 13, 2006) Moreover, plaintiff surmises that while the "rudeness" claims against White have never been sustained during investigation, the investigators should have reviewed plaintiff's entire personnel record and would surely have not found White's denials of wrongdoing to be credible.  However, the fact that investigators chose to believe White's version of the incidents does not establish that the City failed to conduct an adequate investigation or failed to discipline its police officers where discipline was warranted.  *Id.* at *10.

Nevertheless, plaintiff presents his own statistical analysis of the number of internal complaints filed against White.  Plaintiff compares the number of complaints filed against White to the number of complaints filed against all Cleveland police officers, regardless of assignment (e.g. traffic, patrol, adminstration).  Plaintiff concludes that White's rate of receiving complaints is more than the average police officer.  Clearly, an expert opinion is necessary.  Even in cases where an expert sought to establish a city's liability based on review of statistical evidence of civil complaints, the expert's opinion has been found to be merely conclusory.  In *Thomas v. City of Chattanooga,* 398 F.3d 426, 430-431 (6th Cir. 2005), for example, the Sixth Circuit found an expert's opinion insufficient because he did not explain how he drew his conclusions from the list of complaints made against the police department:

> The civil complaints which [the expert] evaluated ranged from a shooting to a broken fingernail, but [the expert] did nothing to inform the court as to whether most of the complaints were serious or frivolous. [The expert] also failed to explain how one could evaluate the mere number of complaints in a vacuum to come to a conclusion

> about the Department's policies. Moreover, [the expert] failed to present any data upon which the Court could compare or contrast the number of excessive force complaints made by citizens of Chattanooga with the number of excessive force complaints in similarly-sized cities or in cities with a similarly sized police force.

Plaintiff's use of non-expert analysis falls far short of establishing the City's liability.

For these reasons, the evidence involving White's career as a police officer and his off-duty infractions fail to establish municipal liability.  Moreover, "It is well-settled that a plaintiff must do more than prove that a single officer was improperly trained or out of control, even if the City had been aware of past complaints against that particular officer." *Tomazic v. City of Cleveland,* 2006 WL 2661295 (N.D.Ohio Sept. 14, 2006) (citing *City of Canton*, *supra*).

Plaintiff also points out that the Justice Department investigated the Cleveland Police Department beginning in 2000 which, plaintiff asserts, should have put the City on notice that its officers had violated the constitutional rights of members of the public.  The investigation concluded in 2005 following the City's compliance with the terms of a previous letter agreement.  (Doc. 62 Ex. F) Clearly, the investigation fails to constitute evidence of a constitutional violation.  *See Byrd v. District of Columbia,* 297 F.Supp.2d 136 (D.D.C. 2003 (A memorandum of agreement between the Justice Department and the municipality was not evidence of a policy or custom of failure to investigate and discipline officers for their excessive force.)

Finally, plaintiff points out that in January 2007, the City adopted a policy entitled, "Early Intervention Program (EIP)," to prevent inappropriate police conduct before discipline is required.  Plaintiff asserts that the EIP is useless and provides no protection to the public from "problem officers."  As plaintiff acknowledges, the EIP was implemented after the

22

alleged incident herein and, thus, it cannot form the basis for a § 1983 City policy.  Again, however, plaintiff fails to offer expert opinion as to the effectiveness of this type of policy.

Based on the foregoing, plaintiff fails to offer evidence that the City had a policy of deliberate indifference to protecting the public from its problem officers.  A municipality cannot be held liable under § 1983 solely because it employs a tortfeasor, or for random, unauthorized acts of its employees.  *Monell,* 436 U.S. at 691.   This appears to be the situation here.  Plaintiff provides no evidence that his encounter with White was made pursuant to a City  policy.  On this basis, the City is entitled to summary judgment.

**Conclusion**

For the foregoing reasons, defendant Alvin L. White's Motion for Summary Judgment is denied.  The Motion for Summary Judgment of defendants City of Cleveland, Rocco M. Pollutro, Martin L. Flask, Mary G. Bounds, Edward F. Lohn and Michael McGrath is granted.

IT IS SO ORDERED.

 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 9/19/07